# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,     )
                                    )
             v.                )     02: 05cr385-3
                                    )
WANDA SOLOMON           )

## MEMORANDUM OPINION AND ORDER

November 1, 2006

Presently before the Court is the MOTION TO WITHDRAW GUILTY PLEA filed by defendant Wanda Solomon, and the opposition thereto filed by the government.  The matter has been fully briefed by the parties and is ripe for disposition.  After considering and balancing the three factors for withdrawal of a guilty plea set forth in *United States v. Jones*, 336 F.3d 245 (3d Cir. 2003), the Court finds that Defendant has failed to establish any of the required criteria under *Jones*.  Therefore, the motion will be denied.

### EVIDENTIARY HEARING NOT NECESSARY

Based upon a careful and detailed review of the record to date and the relevant law, the Court has determined that an evidentiary hearing is not required.  *See United States v. Jasper*, 481 F.2d 976 (3d Cir. 1973) (holding that an evidentiary hearing is not required when the record in the proceedings leading to the guilty plea shows compliance with Federal Rule of Criminal Procedure 11 or the record establishes that the plea was voluntarily, knowingly, and intelligently made.)  The Court finds and rules that the transcript of the proceeding in which the guilty plea was entered establishes beyond question that the Defendant understood the

nature of the charges against her and the consequences of the plea and that there existed a

factual basis to support such a plea.


## BACKGROUND

Defendant, Wanda Solomon, along with co-defendants Cadee Akins and Khaliah

Solomon, was indicted on November 10, 2005, by a federal Grand Jury in the Western District

of Pennsylvania at Criminal No. 05-350 with one-count of drug trafficking conspiracy in

violation of Title 21, United States Code, section 846.

On December 14, 2005, a federal Grand Jury in the Western District of Pennsylvania

returned a one-count Indictment at Criminal No. 05-385 in which it charged Jelani Solomon

with a narcotics trafficking conspiracy in violation of Title 21, United States Code, section 846.

On March 28, 2006, the grand jury returned a nine-count Superseding Indictment at

Criminal No. 05-385 in which Jelani Solomon, Wanda Solomon, and Claron Hanner were

charged in Count One with a narcotics trafficking conspiracy in violation of Title 21, United

States Code, section 846, and Title 18, United States Code, section 2.   Additional narcotics and

firearms charges, including charges relating to the murder of Frank Helisek, Jr., are included in

the Superseding Indictment, although Wanda Solomon is not charged in these additional

counts.

The criminal case against Wanda Solomon at Criminal No. 05-350 was scheduled for

trial on July 31, 2006.  Shortly before jury selection on July 31, 2006, Solomon indicated she

wished to enter a guilty plea. (Tr. at 2.)  The Court initially set the change of plea hearing for

that afternoon.   However, recognizing that her bond would be revoked upon entry of her plea,

2

Solomon asked for additional time to get her personal affairs in order.  A written plea

agreement (which included a plea to the Indictment at 05-350 and the Superseding Indictment

at 05-385) was provided to Solomon's counsel on July 31, 2006.  The Court then rescheduled

the change of plea hearing for August 2, 2006, at 9:30 A.M.

On August 2, 2006, Solomon came to Court and indicated that she had changed her

mind again and did not want to change her plea to guilty.  (Tr. at 2-5.)  The Court announced

that jury selection would commence later that morning or early afternoon as soon as jurors

serving on the current panel became available.  Trial was to commence immediately following

jury selection.  Thereafter, Defendant, with a number of her religious advisors, requested a

meeting with the prosecutor, Assistant U.S. Attorney Tina O. Miller.  Following that meeting,

Solomon informed the Court that she again wished to enter a guilty plea at both Criminal Nos.

05-350 and 05-385.  (Tr. at 6.)

At approximately 1:30 P.M. on the afternoon of August 2, 2006, Defendant appeared

before this Court to (i) change her plea of not guilty to a plea of guilty to the one-count

indictment at Criminal No. 05-350 and (ii) change her plea of not guilty to a plea of guilty to

Count 1 of the Superseding Indictment at Criminal No. 05-385.

At the hearing, the Court placed Defendant under oath and conducted an extensive

colloquy with her in open session and in very clear, plain language.  The Court found

Defendant competent to enter a plea of guilty without objection from her counsel.  The Court

further explained Defendant's constitutional and other rights, including: Defendant's right to a

trial by jury; her privilege against self-incrimination; her right to participate in jury selection;

the applicable burden of proof beyond a reasonable doubt which the government would be

required to meet at trial; and her right to confront, question and cross-examine witnesses at

trial.  (Tr. at 12-15.)  Throughout the colloquy, the Defendant indicated she understood the

effect of a guilty plea and stated to the Court that she still desired to plead guilty.  (*Id.* at 8, 12,

15, 16, 22, 28-30, 41, 42, 43, and 44.)

   The Court explained the statutory mandatory minimum and maximum sentence or

penalties which may be imposed with respect to Count 1 of the Indictment filed at Criminal 05-

350 and with respect to Count 1 of the Superseding Indictment filed at Criminal No. 05-385:

| | |
|---|---|
| THE COURT: | The conspiracy charged at Criminal No. 05-350, as well as the conspiracy charged at Criminal No. 05-385, the penalties **in each case** are: |
| | A term of imprisonment of not less than ten years to a maximum of life. A fine of four million dollars. A term of supervised release up to five years. A mandatory special assessment of $100 per count of conviction, which would result in a special assessment of $200 for both cases. And restitution under the Victim Witness Protection Act.  Do you understand that? |
| MS. SOLOMON: | Yes. |

(Tr. at 17, emphasis added.)

   The Court then explained that while the United States Sentencing Guidelines were no

longer mandatory, but rather advisory, the Court would consider them in any sentence that it may

impose.  The Court informed Defendant that it would be unable to determine her advisory guideline

range until after a presentence investigation report was prepared by the United States Probation

Office, and until after both she and the government had an opportunity to challenge the reported

facts and potential application of the guidelines contained in that report. The Court asked counsel

4

for the government what the position of the government was in regard to the applicable sentencing

guideline range.  The Assistant U.S. Attorney responded as follows:

> We have calculated the guidelines with the <u>two cases combined</u>, the
> total quantity of drugs being for both the conspiracy at 05-350 and 05-
> 385.
>
> We believe based on that that the base offense level is Level 34
> because there are 15 to 50 kilograms of cocaine attributable to Miss
> Solomon for both of the conspiracies.  We also believe that under
> 3B1.1 that Miss Solomon was an organizer or leader of criminal
> activity that involved five or more participants, which would result in
> an increase of three or four levels, depending on her level of
> involvement there.  That would result in a level 37 or 38, minus 2 for
> acceptance for responsibility; would be a sentence of between 168 to
> 235, depending on the level.

(Tr. at 18-19, emphasis added.)

The Court also asked counsel for Defendant what his position was with regard to the

applicable sentencing guideline range.  He responded as follows:

> Your Honor, my position would be that the base offense level would
> be closer to 32, and that she would get the, the two-level reduction for
> having pled guilty.
>
> Also, that she may be eligible for a further reduction based on her
> minimal involvement.
>
> However, with a base level of 30, I believe, or with an adjusted level
> of 30, however, that she would -- her sentencing guideline would be
> between 97 and 121 months.

(*Id.* at 19.)

The Court then informed Defendant that "after it's been determined what guideline

range of sentences applies to a case, the Judge has the authority to not follow the recommended

guideline range and impose a sentence that is more severe, that is, longer, or less severe, that is,

5

shorter than that recommended by the guidelines.  Do you understand that?"  (*Id.* at 20).  Defendant replied, "Yes."  Defendant stated that she understood everything the Court had stated to her, including the minimum and maximum penalties for her offenses.  She further testified that no one had threatened or coerced her in any way to plead guilty, and that, with respect to the terms of her written plea agreement with the government, no promises had been made to induce her to plead guilty.  (*Id.* at 28-30.)  Defendant also indicated that she had read the plea agreement and reviewed it completely with her attorney; that she understood all of the content of the plea agreement, and that she had signed it in the presence of her attorney.  (*Id.* at 28.)

The Assistant United States Attorney proceeded to place on the record the elements of the separate offenses, as well as a lengthy factual recitation of the government's evidence, *to wit:*

> Your Honor, the evidence would show that in January 2004, specifically, January 20th, 2004, Miss Solomon's son, Jelanie, went to jail after pleading guilty to a cocaine distribution charge that had been pending by the state.
>
> . . .
>
> What was subsequently discovered, Your Honor, was that after Jelanie went to jail, Miss Solomon picked up his drug business.  . . .
>
> . . .
>
> The initial transactions back in the mid-90's between Jelanie Solomon and the source, Wayne Thompson, were accomplished by Wayne giving the drugs to Wanda, and her subsequently giving the drugs to Jelanie, until Wayne and Jelanie started to deal together. . . .
>
> . . .
>
> According to the information we have received, [Miss Solomon] approached other individuals about selling kilogram quantities of cocaine, including Cadee Akins.  . . .

[Cadee Akins] has estimated that he sold between four and a half - - around four and a half ounces of powder and/or crack per month from December 2004, until at least June of 2004 (sic), to Miss Solomon.

. . .

(Tr. at 33-39).

After the Assistant U.S. Attorney summarized Defendant's involvement in the offenses, the Court asked Defendant whether she agreed with the government's summary of what she did. In response, Defendant stated:

THE DEFENDANT: Um, I admit to some of that, but not all.

THE COURT: Are there any additions or corrections you would like to make, then?

THE DEFENDANT: Um, yes. Here it states from 1999 to 2005. I didn't even know Mr. Hanner then. I met Mr. Hanner in January. I had - - Khaliah didn't even know Mr. Hanner in 1999. And this says here that this was from 1999. I've never, never had no dealings. I'm sorry.

. . .

MS. MILLER: And, Your Honor, perhaps just a point of clarification. The conspiracy charge, the time frame does not necessarily mean that all members were involved at all times in the conspiracy. It's just that there was a conspiracy that existed. And I think the law allows that people can come in and out of that conspiracy at different time frames during the conspiracy.

So it doesn't - - that charge doesn't mean that Mr. Hanner, Jelanie Solomon and Wanda Solomon were all involved from '99 to 2005. And that, I don't believe that I said that in my factual recitation. But I think maybe there's just some confusion about the legal concepts.

THE COURT: Right. Do you understand that the concept of conspiracy can take a long period of time, but you individually don't have to have been in it from 1999 to 2005. Some time within that time you were, however; correct?

THE DEFENDANT: Yes. But not with Mr. Hanner. With David Robinson, Wayne Thompson, Cadee Akins, um, Louis Richardson. Um, and Khaliah. But not Mr. Hanner. I didn't even know him then.

7

. . .

THE COURT:  Now, with those clarifications, the Court finds that there is a factual basis to accept the defendant's plea of guilty, if the same are now entered.  Miss Solomon, do you still wish to plead guilty?

THE DEFENDANT.  Yes.

(Tr. at 39-41.)  The Court proceeded to ask Defendant the following:

THE COURT:  Miss Solomon, you're charged by the United States of America in the criminal indictment at Criminal No. 05-350 with conspiracy to distribute and possession with intent to distribute cocaine and 50 grams or more of cocaine base, commonly known as crack, in violation of Title 21, United States Code, Section 846.  How do you plead to that charge?

THE DEFENDANT:  Guilty.

THE COURT:  You're also charged by the United States of America in the criminal indictment at Criminal No. 05-385 with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of Title 21, United States Code, Section 846. How do you plead to that charge?

THE DEFENDANT:  Guilty.

(Tr. at 43.)

The Court concluded the proceeding by making express findings that Defendant's guilty plea was confirmed as her own "knowing, free, and voluntary act." (Tr. at 42).  The Court entered a judgment of guilty on the record and sentencing was scheduled on November 3, 2006.

On August 8, 2006, six days after Defendant entered her guilty plea, her privately retained attorney, P. William Bercik, Esquire, filed a Motion to Withdraw, which was granted by the Court on August 11, 2006, and David B. Chontos, Esquire, was court appointed to represent Defendant on that same day.

On October 24, 2006, after the presentence investigation report had been prepared, and ten days before sentencing, Defendant, through counsel, filed the instant Motion to Withdraw Guilty Plea but only as to her guilty plea which was entered in Criminal No. 05-385.  In the Motion, Defendant asserts that (i) she did not conspire with Claron Hanner; (ii) her previous privately-retained attorney was deficient because she did not know the plea agreement was for both cases; and (iii) she was advised she faced a mandatory sentence of ten (10) years, not a mandatory twenty (20) year sentence.

## DISCUSSION

Rule 11(d) of the Federal Rules of Criminal Procedure requires a criminal defendant to show a "fair and just reason" in order to withdraw a guilty plea previously accepted by the court. In determining whether a "fair and just reason" has been established, the Court must examine each of the following three factors:  (1) whether defendant asserts his or her innocence; (2) the strength of defendant's reasons to withdraw the plea; and (3) whether the government would be prejudiced by the withdrawal.  *Jones*, 336 F.3d at 252; *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001); *United States v. Huff*, 873 F.2d 709, 711 (3d Cir. 1989).  These factors are not mandatory elements that a defendant must establish in order to withdraw a guilty plea; rather, the district court must analyze the factors *in toto* to reach its conclusion as to whether the defendant has set forth a "fair and just" reason to withdraw the guilty plea.  *United States v. Wilder,* 134 Fed. Appx. 527 (3d Cir. 2005); *see also United States v. Wilder*, 2006 WL 3024702 (3d Cir. Oct. 25, 2006).

The defendant bears the substantial burden of demonstrating that a "fair and just reason" exists for withdrawing the plea, *United States v. Isaac*, 141 F.3d 477, 485 (3d Cir. 1990),

and that burden is "substantial." *Jones,* 336 F.3d at 252.  This heavy burden reflects the notion that "[o]nce accepted, a guilty plea may not automatically be withdrawn at the defendant's whim." *Brown,* 250 F.3d at 815.  *See also United States v. Hyde*, 520 U.S. 620 (1977) ("After the defendant has sworn in open court that he actually committed the crimes, after he has stated that he is pleading guilty because he is guilty, after the court has found a factual basis for the plea, and after the court has explicitly announced that it accepts the plea, [a defendant cannot] withdraw a guilty plea simply on a lark.")  "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992).

Furthermore, because Rule 11(b)(3) of the Federal Rules of Criminal Procedure requires the court to be satisfied as to the defendant's guilt before accepting a guilty plea, in order to demonstrate a "fair and just reason" to withdraw the plea the "defendant must . . . not only reassert innocence, but *give sufficient reasons to explain why contradictory positions were taken before the district court* and why permission should be given to withdraw the guilty plea and reclaim the right to trial." *United States v. Jones*, 979 F.2d at 318 (emphasis added).

A          <u>Assertion of Innocence</u>

Under the test outlined in *Jones,* the first issue the Court must address is whether Defendant properly asserted her innocence as part of her request to withdraw her plea.  In this case, Defendant summarily claims that she is "innocent of the charges she faces at this indictment," but does not present any argument in support of this position.  Mot. at ¶ 9.

An assertion of innocence by the defendant weighs heavily in favor of granting a plea withdrawal motion if the assertion is credible. *Government of Virgin Islands v. Berry,* 631 F.2d 214, 220 (3d Cir. 1980). "Bald assertions of innocence, however, are insufficient to permit a defendant to withdraw her guilty plea . . . [they] must be buttressed by facts in the record that support a claimed defense." *United States v. Brown*, 250 F.3d 811, 818 (3d Cir. 2001).

The Court finds that Defendant's assertion of innocence is lacking in credibility. Defendant has not proffered any factual contention or specific legal defense in support of her assertion. *See United States v. Barker*, 514 F.3d 208, 220 (C.A.D.C.), *cert. denied*, 421 U.S. 1013 (1975). (movant has not effectively denied his culpability and withdrawal motion need not be granted if movant has not made out legally cognizable defense.) Significantly, during the plea hearing, Defendant acknowledged and admitted that she committed the crimes.

For these reasons and in light of Defendant's admissions during her guilty plea colloquy hearing, and of the plethora of witnesses and evidence available to support the government's position of which the Court is aware from that portion of the plea colloquy at side bar under seal and from other cases, the Court finds and rules that Defendant's assertion of innocence is unconvincing. The Court concludes that Defendant has failed to adequately assert her innocence under *Jones:* bare assertions of innocence do not entitle Defendant to the privilege of withdrawing her guilty plea.

11

B.                    The Strength of Defendant's Reason(s) to Withdraw the Plea

Defendant argues that there are at least four reasons why she should be allowed to withdraw her plea.  The Court has considered each of Defendant's arguments and finds them all  to be without merit.

First,  Defendant claims that she did not know Claron Hanner until New Year's Eve 2003; however, as the Court explained during the change of plea hearing, this has no legal effect on the validity of the plea in this case.  A defendant may be properly convicted of conspiracy even though he or she participated on only one occasion and played a relatively minor role.  *United States v. Roberts*, 881 F.2d 95, 101 (4th Cir. 1989).  Further, a defendant need not know the identities of the other participants.  *Blumenthal v. United States*,  332 U.S. 539 (1947).  ("the law rightly gives room for allowing the conviction of those discovered upon showing sufficiently the essential nature of the plan and their connections with it, without requiring evidence of knowledge of all its details or of the participation of others."); *United States v. Donsky*, 825 F.2d 746, 753-54 (3d Cir. 1987).

In this case, the factual basis for the plea, which significantly has never been disputed by Wanda Solomon, was that Wanda Solomon took over the long-standing drug business operated by her son, Jelani Solomon, after he went to jail in January, 2004. It is clearly Jelani Solomon's drug organization that forms the basis of the conspiracy charged at Count One of the Superseding Indictment at Criminal No. 05-385.

Whether Wanda Solomon knew Claron Hanner in 1999 (or at any time) or what his role in the conspiracy was is of no significance legally.

Next, Defendant contends that her previous counsel's "performance" was "deficient."  This assertion is completely contrary to the record in this case and contrary to her

assertions, under oath, at the plea hearing.  As privately-retained counsel, Attorney Bercik represented Defendant competently throughout the lengthy course of these cases and was fully prepared to commence a jury trial on Criminal Case No. 05-350 at the time Defendant notified the Court that she wished to plead guilty.  Immediately before asking the Defendant how she pleads to the charges near the end of the colloquy hearing, the Court specifically asked:

> THE COURT:      Miss Solomon, are you satisfied in all respects with the advice and representation which your attorney, Mr. Bercik, has provided to you.
>
> THE DEFENDANT:   Yes.

(Tr. at 43.)  Defendant's contention that her prior attorney's performance was "deficient" is without merit and contrary to her express statement to the Court.

Third, Defendant contends that she did not know that she was pleading guilty to the conspiracy at Criminal No. 05-385.  Again, this contention is completely contradicted by the record. From almost the first moments of the plea hearing, the Court asked Defendant whether she was entering a plea of guilty to both cases, and without hesitation, she responded "Yes."  Moreover, Paragraph A(1) of the plea agreement, which was signed by Defendant on August 2, 2006, specifically states the following:

> [Wanda Solomon] will enter a plea of guilty to Count One of the Indictment at Criminal No. 05-350 charging her with violating Title 21, United States Code, Section 846 and Count One of the Superseding Indictment at Criminal No. 05-385, charging her with violating Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2, pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

*Plea Agreement, Document No. 89.*

13

After extensive questioning of Defendant regarding the plea agreement both on the record and at sidebar (under seal) the Court inquired:

> THE COURT:     Does the plea agreement set forth your entire understanding and agreement with the government concerning the charges now pending against you in the two cases?
>
> THE DEFENDANT: Yes.

(Tr. at 28).

Moreover, at the hearing Ms. Solomon personally signed a separate Change of Plea document of her own free will at each of the indictments at Criminal No. 05-350 and Criminal No. 05-385.   The record is replete with evidence that Defendant knew, understood and wanted to plead to the conspiracy charges at both indictments at Criminal No. 05-350 and Criminal No. 05-385.

Finally, the Court finds that Defendant's contention that "she was never advised that she could be facing a minimum mandatory sentence of 20 years - 10 years from each conspiracy" is again wholly without merit.  As indicated in the Presentence Investigation Report, the Defendant is not facing a minimum mandatory sentence of 20 years; rather she faces a mandatory minimum of 10 years at each count.  There is absolutely no requirement under Section 841 of Title 21, United States Code, that the Court must impose mandatory drug sentences to run consecutively, nor has the government yet sought a consecutive mandatory sentence in this case.[1]

---

[1]     As the government aptly points out, if Defendant is allowed to withdraw her plea, then she would likely face a consecutive sentence for both cases, if convicted.  The consequences of withdrawing her plea are very serious if she is convicted at trial.  For example, if she is convicted at Criminal No. 05-385, she will face not only a mandatory 20 years imprisonment in that case (because the government has represented that it will file a Section 851 information based on Defendant's prior felony drug conviction), but Defendant will also likely be classified as a career offender under United States Sentencing Guidelines 4B1.1 and face an advisory

(continued...)

14

Furthermore, Defendant was clearly advised during the colloquy that she faced a mandatory 10-year sentence in each of the cases (Tr. at 16).  The Court notes, however, that Defendant's advisory Sentencing Guideline range of 262 months - 327 months far exceeds a 20-year mandatory minimum.

The Court finds and rules that Defendant has not satisfied her burden of demonstrating the existence of any fair and just reasons why the Court should permit her to withdraw her guilty plea.

C.          Prejudice to Government

If the defendant were to succeed in showing a fair and just reason for withdrawing her plea, the burden would shift to the government to show that it would be prejudiced by the withdrawal.  However,  the Court of Appeals for the Third Circuit has made clear that "the government is not required to show prejudice when a defendant has shown no sufficient grounds for permitting withdrawal of the plea." *See United States v. Martinez*, 785 F.2d 111, 116 (3d Cir. 1986).  Because the Court has previously found that Defendant has not presented sufficient grounds to permit her to withdraw her guilty plea, the Court is not required to consider the question of resultant governmental prejudice.  Nevertheless, in the interest of being thorough, the Court will address the final prong of the *Jones* test.

Increased cost and inconvenience to the government are grounds for finding prejudice, as are the diminished memory and incentive to cooperate of Government witnesses.  The

---

[1](...continued)
guideline range of 360 - life.  See Govt's Opposition, at n. 3.

15

mere "adverse impact on the administration of justice," however, is not adequate.  *Government of the Virgin Islands v. Knight,* 764 F. Supp. 1042, 1050 (D.V.I. 1991).  As the government correctly notes, pretrial motions have been filed and briefed in the case at Criminal No. 05-385 by Defendant Jelani Solomon.  Permitting Wanda Solomon back in the case at this date may put her on a different track from her co-defendants.  A motion to sever has already been filed by Defendant Jelani Solomon based on his desire for a speedy trial.   Should the Court deny Jelani Solomon's motion to sever, Wanda Solomon's reappearance in the case will likely cause further delays.

As a result, despite the fact that the Court need not address the issue of prejudice in situations where, as here, the defendant has not offered a fair and just reason to permit withdrawing her plea, the Court finds and rules that the government would be prejudiced by Defendant's withdrawal of her guilty plea.

### CONCLUSION

The Court finds and rules that Defendant has failed to present either a credible assertion of innocence or a fair and just reason for this Court to permit her to withdraw her plea of guilty.  Likewise, Defendant has failed to demonstrate that the government would not be unfairly prejudiced by such a withdrawal.

Therefore, after considering and balancing the three factors set forth in *Jones*, the Court concludes that Defendant has failed to establish any of the required criteria under *Jones*.  Accordingly, Defendant's motion to withdraw her guilty plea will be denied.  An appropriate Order follows.

McVerry, J.

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,       )
                                 )
                 v.           )     02: 05cr385-3
                                 )
WANDA SOLOMON              )

**ORDER OF COURT**

AND NOW, this 1st day of November, 2006, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that the Motion to Withdraw Guilty Plea filed by Wanda Solomon is **DENIED.**

The Court will now turn its attention to the objections to the Presentence Investigation Report filed by Defendant and issue Tentative Findings and Rulings.  A sentencing date will be scheduled for Wanda Solomon at Criminal No. 05-350 and Criminal No. 05-385 in the near future.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:       Tina O. Miller,
            Assistant U.S. Attorney
            email:  tina.o.miller@usdoj.gov

            Leo M. Dillon,
            Assistant U.S. Attorney
            email:  Leo.Dillon@usdoj.gov

            David B. Chontos, Esquire
            email:  d.chontos@att.net

            Martin A. Dietz, Esquire
            Email: MDietzEsq@aol.com

            Robert E. Stewart, Esquire
            Email: restjs@msn.com

            Caroline M. Roberto, Esquire
            Email: croberto@choiceonemail.com

            Jay T. McCamic, ESquire
            McCamic, Sacco, Pizzuti & McCoid, PLLC
            Email: jtmccamic@mspmlaw.com