IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>   v. )<br>) <br>WANDA SOLOMON, )<br>)<br>       Defendant. ) | Criminal Nos. 05-350 & 05-385<br>Senior Judge Nora Barry Fischer |

**MEMORANDUM ORDER**

**I.    INTRODUCTION**

Presently before the Court is Defendant Wanda Solomon's Motion to Reconsider Order to Deny Compassionate Release (Docket Nos. 310 at Crim. No. 05-350; 1029 at Crim. No. 05-385), the Government's Response thereto (Docket Nos. 312 at Crim. No. 05-350; 1031 at Crim. No. 05-385), Defendant's Reply (Docket Nos. 314 at Crim. No. 05-350; 1034 at Crim. No. 05-385) and the Government's Sur-reply (Docket Nos. 318 at Crim. No. 05-350; 1041 at Crim. No. 05-385).[1] After careful consideration of the parties' respective positions set forth in the briefing and for reasons that follow, Defendant's Motion for reconsideration is granted in part and denied in part. The Court concludes that reconsideration is warranted on the issue of administrative exhaustion and that Defendant's motion for compassionate release is properly before the Court; however, the Court declines to exercise its discretion to reduce Defendant's sentence.

---

[1] Although the relevant documents cited herein are filed at both docket numbers, the Court refers to the documents filed at Criminal No. 05-385 in order to streamline citations to the record.

1

II.     **BACKGROUND**

On August 2, 2006, Defendant appeared before Judge Terrence F. McVerry[2] and pled guilty to Count One of the Indictment at Criminal No. 05-350, which charged her with conspiracy to distribute and possess with intent to distribute cocaine and 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 846 (hereinafter, "the crack cocaine count"), and Count One of the Superseding Indictment at Criminal No. 05-385, which charged her with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (hereinafter, the "powder cocaine count"). (Docket No. 89).

On March 20, 2007, Judge McVerry sentenced Defendant to 240 months' imprisonment on both the crack cocaine and powder cocaine counts to be served concurrently, followed by concurrent terms of five (5) years' supervised release at each count. (Docket No. 376 at 2-3). Defendant filed a direct appeal, and the United States Court of Appeals for the Third Circuit affirmed the District Court's Judgment on June 1, 2009. (Docket No. 803). Defendant later unsuccessfully attempted on numerous occasions to have her sentence vacated or reduced. (Docket Nos. 806, 809, 829, 833, 834, 838, 868, 882, 914, 915, 916, 918).

Defendant also filed a motion for a sentence reduction as a result of amendments to the Sentencing Guidelines that retroactively reduced the base offense level for certain drug offenses, which Judge McVerry denied on February 19, 2016. (Docket Nos. 923, 925). On January 4, 2017, the Third Circuit Court of Appeals affirmed the District Court's decision not to reduce Defendant's sentence. (Docket No. 943-1). Next, Defendant filed a motion for reduction of sentence pursuant to Section 404(b) of the First Step Act, which this Court denied on October 1, 2019. (Docket Nos. 951, 983, 984).

---

[2]     Defendant's cases originally were assigned to Judge McVerry. Following Judge McVerry's retirement, the cases were re-assigned to this member of the Court when Defendant previously filed a motion for a sentence reduction.

On May 7, 2020, Defendant filed a motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), arguing that her medical conditions (asthma, diabetes, hypertension and hepatitis C) place her at greater risk of contracting COVID-19 at FPC Alderson where she is incarcerated and therefore satisfy the "extraordinary and compelling reasons" standard under § 3582(c)(1)(A)(i). (Docket No. 1018 at 1-4, 13-15). The Government responded that Defendant's Motion was premature because she did not exhaust her administrative remedies within the BOP. (Docket No. 1024 at 5-10).

On May 28, 2020, this Court ruled that Defendant failed to exhaust her administrative remedies because the Warden of FPC Alderson responded to her request for compassionate release within 30 days of receipt; thus, she "is obligated to complete the administrative appeal process," but she had not done so prior to filing her motion with the Court. *United States v. Solomon*, Crim. Nos. 05-350 & 05-385, 2020 WL 2768897, at *3 (W.D. Pa. May 28, 2020).

Defendant subsequently filed a motion for reconsideration, arguing that the Court should reconsider its ruling "[b]ased on the analysis from [other] recent decisions" wherein courts found that BOP appeals exhaustion was unnecessary in order to file a motion for compassionate release in federal court. (Docket Nos. 1029 at 3; 1034 at 1). Contrary to the Government's original position that Defendant's compassionate release motion was premature, the Government now responds that "§ 3582(c)(1)(A) allows a defendant to file a motion after 'the lapse of 30 days from the receipt of such a request by the warden,' regardless of whether the warden has responded within those 30 days or not and regardless of whether or not the defendant files an appeal within BOP."[3]

---

[3] Even so, the Government still contends that Defendant's motion is premature because her request to the warden did not mention COVID-19 and thus was not properly exhausted. (Docket Nos. 1031 at 2-3; 1041 at 1-2). To that end, the Court is cognizant of the decision rendered by the Honorable Joy Flowers Conti in *United States v. Valenta*, Crim. No. 15-161, 2020 WL 1689786 (W.D. Pa. Apr. 7, 2020), concluding that the defendant failed to exhaust his administrative remedies regarding the COVID-19 virus because he "made no specific reference to Covid-19 in his request and the BOP did not consider his request for release based on Covid-19." (*Id.* at 1). In so ruling, Judge Conti observed that the BOP "could not have reasonably known about Covid-19" when it received the defendant's request

3

(Docket No. 1031 at 2). The Government acknowledges that Defendant properly submitted a request to the BOP 30 days or more before filing her compassionate release motion with the Court. (*Id.*). Upon further consideration, the Government also submits that Defendant's diabetes may be an "extraordinary and compelling reason" for release under § 3582(c)(1)(A) in the context of the COVID-19 pandemic, but her other claimed medical conditions of hepatitis C, asthma and hypertension do not meet this standard. (*Id.* at 3). However, even if the Court grants Defendant's motion for reconsideration, the Government argues that it should nonetheless deny her motion for compassionate release because the § 3553(a) sentencing factors overwhelmingly favor the sentence originally imposed. (Docket No. 1041 at 2-3). To that end, the Government notes that the United States Probation Office continues to oppose Defendant's release. (*Id.* at 3).

### III.  DISCUSSION

A motion for reconsideration only will be granted where a party demonstrates at least one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Cafe ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Here, reconsideration is warranted because there is a need to correct what now could be considered a

---

on January 7, 2020, given that the United States government announced the formation of a COVID-19 task force on January 29, 2020, and the World Health Organization declared a global health emergency on January 30, 2020. (*Id.*). Unlike the defendant in *Valenta*, Defendant submitted her request to the BOP on April 3, 2020, which was well after the significant COVID-19 dates Judge Conti referenced. (Docket No. 1018-4). Accordingly, it would be reasonable to conclude in Defendant's case that the BOP was well aware of the COVID-19 crisis and that her request was, at least partially, related to same. *See United States v. Davidson*, Nos. 2:16-cr-00139-2 & 2:17-cr-00334, 2020 WL 4877255, at *10 (W.D. Pa. Aug. 20, 2020) (concluding that the timing and status of the defendant's administrative request for relief was fundamentally different from the defendant in *Valenta* and other defendants in cases where the court reached a similar conclusion because "the BOP's review of those defendants' administrative requests was complete prior to the emergence (at least with any level of public notoriety) of the COVID-19 pandemic, and critically, prior to the BOP's announced implementation of its own wide-ranging and extensive reviews of the medical and custody situation of every BOP inmate in the context of the COVID-19 pandemic").

4

clear error of law given that the Third Circuit Court of Appeals recently clarified the proper reading of § 3582(c)(1)(A)'s exhaustion requirement.

### A. Reconsideration is Warranted on the Issue of Administrative Exhaustion.

Defendant submits that the Court should reconsider its ruling and grant her compassionate release based on the analysis of *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) (stating that "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them") and *United States v. Somerville*, No. 2:12-CR-225-NR, ___ F.Supp.3d ___, 2020 WL 2781585, at *4 (W.D. Pa. May 29, 2020) (concluding that nothing in the statutory text limits the fast-track option to circumstances in which the warden has failed to respond and that the 30-day clock runs from the warden's receipt of the request). (*See* Docket No. 1029 at 2-3). Essentially, Defendant argues that the Court should reconsider its ruling because other courts have reached a different conclusion concerning satisfaction of § 3582(c)(1)(A)'s exhaustion requirement.

Section 3582(c)(1)(A) provides, in relevant part, that a defendant may file a motion for compassionate release with the court "after [he or she] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Courts in this district and other federal courts throughout the country have split on the proper reading of this exhaustion requirement. *See United States v. Grasha*, Crim. No. 18-235, ___ F. Supp. 3d ___, 2020 WL 4583874, at *2 (W.D. Pa. Aug. 10, 2020) (observing that courts have taken alternative approaches to § 3582(c)(1)(A)'s exhaustion requirement and describing same); *United States v. Ezukanma*, Crim No. 3:15-CR-0254-B-1, 2020 WL 4569067, at *2-*3 (N.D. Tex. Aug 7, 2020) (discussing split of authority on the issue among district courts).

5

On one side of the debate, some district courts, including this Court in *Solomon*, read "the lapse of 30 days" language as applying only where the BOP has failed to respond to a compassionate release request within 30 days of its submission. Under this reading, if the warden denies an inmate's request before the lapse of thirty days, an inmate must fully exhaust her administrative remedies before filing her motion, as this court ruled in *Solomon*. Other courts in this District have reached the same conclusion. *See Grasha*, 2020 WL 4583874, at *5 ("The more persuasive reading of the statute is that an inmate may seek relief in court upon demonstrating either: (1) completion of the BOP remedies, or (2) 30 days of forgetfulness or inattention during the administrative review, whichever is earlier."); *United States v. Early*, Crim. No. 19-92, 2020 WL 2572276, at *3 (W.D. Pa. May 21, 2020) ("[A] defendant must wait to file a motion with this Court until either his administrative request related to compassionate release is denied and he fully exhausts all administrative rights to appeal or thirty days have passed from the date he made the application *with no response from the warden*, whichever occurs first.") (emphasis in original). Conversely, other district courts, including one in this District, have ruled that "the lapse of 30 days" means the passage of thirty days from the warden's receipt of a request, even if the warden denies the request. *See Somerville*, 2020 WL 2781585 at *4.

Reconsideration would not be warranted just because other federal district courts reached a different conclusion concerning satisfaction of § 3582(c)(1)(A)'s exhaustion requirement than this Court in *Solomon*. However, the Third Circuit Court of Appeals recently issued a precedential opinion clarifying § 3582(c)(1)(A)'s exhaustion requirement which compels this Court to grant reconsideration. In *United States v. Harris*, ___ F.3d ___, 2020 WL 5198870 (3d Cir. 2020), the Court of Appeals wrote:

> The Government concedes that its argument regarding exhaustion was in error. It asks that we reverse the District Court's judgment and remand the matter for further

proceedings on the merits of Harris's motion. We agree that the District Court erred. A prisoner may file a motion for compassionate release with the sentencing court "after [he or she] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, **whichever is earlier**." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). The Government argued, and the District Court agreed, that because the Warden denied Harris's request within thirty days, he was required to completely exhaust the administrative remedy process. However, the statute states that the defendant may file the motion thirty days after the warden receives his request. *See United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020) ("But before they [file a compassionate-release motion], defendants must at least ask the Bureau of Prisons (BOP) to do so on their behalf and give BOP thirty days to respond.").

Accordingly, based on the Government's concession of error, we will vacate the District Court's order and remand the matter for further proceedings on the merits of Harris's motion.

*Id.* at *1.

Contrary to *Harris*, this Court previously ruled that Defendant was obligated to complete the administrative remedy process, which she had not done, before filing a motion for compassionate release with this Court. *Solomon*, 2020 WL 2768897, at *3. *Harris* makes clear that a defendant is not required to completely exhaust the administrative remedy process and rather "may file the motion thirty days after the warden receives [her] request." 2020 WL 5198870, at *1. Here, Defendant filed her motion for compassionate release on May 7, 2020, which was more than thirty days after she submitted her request to the Warden of FPC Alderson on April 3, 2020.[4] (Docket Nos. 1018; 1018-4). Accordingly, the Court grants reconsideration to correct what now could be considered a clear error of law pursuant to *Harris*, finds that there is no issue as to administrative exhaustion and determines that Defendant's motion for compassionate release is

---

4     The Government now acknowledges that "Defendant properly submitted a request to the BOP warden 30 days or more before filing [her motion for compassionate release]." (Docket No. 1031 at 2).

properly before the Court. Nevertheless, the Court concludes that compassionate release is not warranted in Defendant's case.

### B. The Court Declines to Exercise its Discretion to Reduce Defendant's Sentence.

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed."). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582. *See United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020). Pursuant to that provision, a court may modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The statute guides the court's discretion by requiring the court to consider:

> (1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a), to the extent they apply; and (3) whether a reduction is consistent with the Sentencing Commission's Policy Statement in § 1B1.13 of the Sentencing Guidelines.

*United States v. Brown*, No. 2:12-cr-00224-1, 2020 WL 4345077 at *1 (W.D. Pa. July 29, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

As discussed above, the Court finds that there is no issue as to administrative exhaustion, and the Government now agrees that "Defendant's diabetes 'is a serious physical or medical condition' that 'substantially diminishes' [her] ability 'to provide self-care within the environment of a correctional facility' during the pandemic, and is therefore an 'extraordinary and compelling reason' for release under 18 U.S.C. § 3582(c)(1)(A)(i)." (Docket No. 1031 at 3). However, the Government maintains that the § 3553(a) factors "overwhelmingly favor the sentence originally

imposed and twice reaffirmed, including by the Court as recently as October 2019." (Docket No. 1041 a 2-3).  The Court agrees.

Even accepting the Government's concession that Defendant's diabetes coupled with the COVID-19 pandemic give rise to extraordinary and compelling reasons,[5] those considerations do not outweigh the applicable factors set forth in § 3553(a) which the Court is to consider.  *See* 18 U.S.C. § 3582(c)(1)(A); *Pawlowski*, 967 F.3d at 329 ("[B]efore granting compassionate release, a district court must consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable.") (internal quotation marks and citation omitted); *see also* U.S.S.G. § 1B1.13(2) (under the relevant policy statement in the Guidelines, the Court is to consider whether the defendant is a danger to the safety of any other person or the community as provided in 18 U.S.C. § 3142(g)).  As the Court of Appeals recently affirmed, whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the § 3553(a) factors is committed to the discretion of the district court.  *See Pawlowski*, 967 F.3d at 330.

Having once again carefully considered the relevant § 3553(a) factors in this case, as well

---

[5] There is some question whether Defendant's diabetes, for which she is non-insulin dependent, (*see* Docket No. 1018-2 at 4), coupled with the COVID-19 pandemic suffices to establish extraordinary and compelling reasons given that there are no positive cases of COVID-19 among inmates at FPC Alderson.  *See* https://www.bop.gov/coronavirus/ (last visited Sept. 2, 2020); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Thornton*, Crim. No. 2:18-167-1, 2020 WL 4368155, at *4 (W.D. Pa. July 29, 2020) ("To merit compassionate release, Defendant must show more than mere fear or speculation concerning the possibility of contracting the virus.") (citations omitted).

As to Defendant's other conditions, nothing in the medical records she submitted indicates that she takes any medication for her hepatitis C or that it is not well controlled.  In any event, the CDC has not identified hepatitis C as a high-risk condition for COVID-19 purposes.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html (last visited Sept. 2, 2020) ("Currently, we have no information about whether people with . . . hepatitis C are at increased risk for getting COVID-19 or having severe COVID-19.").  The CDC has stated that individuals with moderate to severe asthma or hypertension  "**might be at an increased risk** for severe illness from COVID-19."  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (emphasis in original) (last visited Sept. 2, 2020).  However, according to Defendant's medical records, her hypertension is well-controlled with medication and, although she has a history of asthma, there is no information to suggest that it is moderate to severe.  (Docket No. 1018-2 at 1, 2, 4).

as § 3142(g), the Court declines to exercise its discretion to reduce the 240-month term of incarceration in Defendant's case, as such sentence remains sufficient, but not greater than necessary to meet all of the goals of sentencing. *See* 18 U.S.C. § 3553(a). In this Court's estimation, such sentence remains fair and appropriate, for the reasons detailed on the sentencing record by Judge McVerry[6] and by this Court in previously denying a sentence reduction, and they are not outweighed by the increased risk of contracting COVID-19 faced by Defendant while incarcerated at FPC Alderson. To that end, the Court reiterates its reasons for denying Defendant's previous request for a sentence reduction which are equally applicable here:

> Defendant played a central role in a drug trafficking conspiracy involving significant amounts of powder cocaine, she continued her involvement in the conspiracy after the murder of an innocent man, she used a minor in connection with her drug trafficking activities and she otherwise had a lengthy criminal history. The Court is cognizant of Defendant's post-sentencing conduct while incarcerated, which includes completing educational classes, earning her GED, maintaining a job and avoiding disciplinary infractions, and commends her for the progress she has made. Nevertheless, the Court finds that the initial sentence of 240 months' imprisonment followed by five (5) years' supervised release remains sufficient but not greater than necessary to meet all of the goals of sentencing in this case, particularly first and third-party deterrence, punishment and protection of the public.

*United States v. Solomon*, Crim. Nos. 05-350 & 05-385, 2019 WL 4805325, at *4 (W.D. Pa. Oct. 1, 2019).

Once again, the Court concludes that the original sentence imposed was necessary and appropriate to reflect the seriousness of the offenses, to provide just punishment, to promote

---

[6] To repeat some of Judge McVerry's remarks at sentencing: (1) the pervasiveness of Defendant's conspiracy was "despicable" because it appeared as though "almost every sibling in [her] family was involved in criminal activity one way or another, including having the involvement to some degree of a minor . . . in transporting drugs and/or money;" (2) Defendant had a "major" leadership role in the conspiracy and continued the conspiracy after "the horrific homicide of a helpless man . . . for virtually no reason in the world;" and (3) Defendant's "prior criminal involvement and history [was] of no small moment in [the Court's] consideration of sentencing." (Docket No. 958-2 at 52). Judge McVerry explained that he sentenced Defendant to 240 months' incarceration to reflect the seriousness of the offenses, to promote respect for the law, to provide sound and just punishment, to afford adequate deterrence to criminal conduct, to protect the public, "especially the public in Beaver County, from further crimes by [Defendant]" and to provide Defendant with needed educational and vocational training. (*Id.* at 53).

respect for the law, to afford adequate deterrence and to protect the public from further crimes by Defendant. *See* 18 U.S.C. §§ 3553(a)(2)(A)-(C); 3142(g). All of these factors previously discussed by Judge McVerry and this Court remain relevant and counsel against granting the sentence reduction Defendant now seeks.

Finally, the Court is not fully persuaded by Defendant's assertion that she does not present a danger to the community and is not likely to recidivate given that she is 60 years old. (Docket Nos. 1018 at 16; 1027 at 13). Although the Court recognizes that Defendant's age and her opportunity to complete educational programming while incarcerated may help to reduce the likelihood of recidivism, those factors must be balanced against her minimal work history,[7] her extremely serious criminal conduct in these cases involving large scale drug trafficking, and her criminal history which includes convictions for a prior drug trafficking offense, larceny, disorderly conduct and harassment. All told, the Court cannot confidently conclude that Defendant will not commit similar offenses which will endanger the community if she is released.

### IV.    CONCLUSION

For all of these reasons, IT IS HEREBY ORDERED that Defendant's Motion to Reconsider Order to Deny Compassionate Release (Docket No. 310 at Crim. No. 05-350; Docket No. 1029 at Crim. No. 05-385) is GRANTED IN PART AND DENIED IN PART as follows: reconsideration is granted on the issue of administrative exhaustion and the Court concludes that Defendant's motion for compassionate release is properly before the Court; however, Defendant's

---

[7] According to the PIR at ¶¶ 69-72, Defendant's work history consists of employment at Federal Express for several months in 2006, working at an independent facility for the elderly for six months in 2000 and working at two different companies doing assembly work for five or six months on one occasion and seven or eight months on another occasion in the 1980s.

11

motion for compassionate release is denied, as the Court declines to exercise its discretion to reduce her sentence.

*s/ Nora Barry Fischer*
Nora Barry Fischer
Senior United States District Judge

Date:  September 2, 2020

cc/ecf:  All counsel of record